UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JSC TRANSMASHHOLDING,               )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 13-1836 (RBW)
                                    )
JAMES F. MILLER AND CHRIS           )
TAYLOR,                             )
                                    )
            Defendants.             )
_____ )

**MEMORANDUM OPINION**

JSC Transmashholding ("Transmashholding"), the plaintiff in this civil matter, has alleged that the defendants, James F. Miller ("Miller") and Chris Taylor ("Taylor"), are liable for conversion and unjust enrichment under District of Columbia law. See Complaint (the "Compl.") ¶ 1. Currently before the Court is Miller's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim upon which relief can be granted, and Rule 12(b)(7), for failure to join an indispensable party under Rule 19.[1] After carefully considering Transmashholding's Complaint, Miller's motion to dismiss, and the

---

[1] Miller filed his original motion to dismiss pursuant to Rule 12(b)(6) on January 7, 2014, Defendant James F. Miller's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mot."), and subsequently filed on January 16, 2014, a motion for leave to amend this motion arguing that, in the alternative, the Complaint should be dismissed pursuant to Rule 12(b)(7), Defendant James F. Miller's Motion for Leave to File an Amendment to Defendant James F. Miller's Motion to Dismiss Plaintiff's Complaint and Amendment to Defendant James F. Miller's Motion to Dismiss Plaintiff's Complaint ("Def.'s Am. Mot."). In light of the plaintiff's consent, see Stipulation to Extend Plaintiff JSC Transmashholding's Time to Respond to Defendant James F. Miller's Motion to Dismiss ("Joint Stipulation") at 1, the Court grants the defendant leave to amend his motion to dismiss the Complaint. The Court notes, however, that Miller's motion for leave to amend does not include a version of the motion as amended, and merely argues the merits of dismissal under Rule 12(b)(7). Accordingly, the Court must refer to both the original motion, Def.'s Mot., as well as the motion for leave to amend throughout this opinion, Def.'s Am. Mot.

memoranda of law submitted by the parties, the Court concludes for the reasons that follow that it must deny Miller's motion to dismiss.[2]

## I. BACKGROUND

The Complaint asserts the following: Transmashholding "is Russia's largest manufacturer of railroad locomotives and cars." Compl. ¶ 2. In 2011, "a rogue [Transmashholding] employee," "without [the] knowledge and approval of" the company, entered into a "sham joint venture agreement[]" (the "Sham Agreement")[3] with Richcom International Asia Ltd. ("Richcom"). Id. ¶¶ 12-13. The Sham Agreement authorized the transfer of €20 million from Transmashholding's bank account in Zurich, Switzerland, to Richcom's bank account at HSBC Holdings, plc ("HSBC") in Hong Kong. Id. ¶ 12. The purpose of the Sham Agreement was to facilitate Richcom's "purchase of [Medium-Term Notes]," an investment that would purportedly result in a "yield of €200 million" for Transmashholding. Id. ¶ 14.

Following execution of the Sham Agreement, Taylor, a Richcom Director, "request[ed] that Richcom lend Miller $600,000 . . . from the funds received from [Transmashholding]" based on "Taylor[s] indicat[ion] that . . . Miller, in his capacity as a partner [at] DLA-Piper Washington DC, will play a crucial role in the buy/sell transactions of medium-Term Notes with institutional

---

[2] The Court considered the following submissions in reaching its decision: (1) the Complaint; (2) Miller's motion to dismiss; (3) the Statement of Points and Authorities in Support of Defendant James F. Miller's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mem."); (4) Miller's amended motion to dismiss; (5) the Statement of Points and Authorities in Support of Defendant James F. Miller's Amendment to Defendant James F. Miller's Motion to Dismiss Plaintiff's Complaint ("Def.'s Am. Mem."); (6) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant James F. Miller's Motion to Dismiss ("Pl.'s Opp'n"); (7) Defendant James F. Miller's Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant James F. Miller's Motion to Dismiss ("Def.'s Reply"); and (8) the parties' Joint Stipulation.

[3] Richcom and the Transmashholding employee executed a Joint Venture Profit Sharing Working Agreement on May 30, 2011, and subsequently a revised Joint Venture Profit Sharing Agreement on June 1, 2011, which Transmashholding asserts "contained substantially the same terms." Compl. ¶ 13. Any minor difference between the two agreements are immaterial for the Court's analysis.

clients." Id. ¶¶ 16, 19 (citations and internal quotation marks omitted). On June 6, 2011, Miller executed a promissory note in the amount of $600,000, naming Taylor as the "[l]ender." Id. ¶ 17; Compl., Exhibit ("Ex.") 1 (Promissory Note) at 1. According to the terms of the note, Miller would repay the principal and accrued interest to Taylor "on a date mutually agreeable between [Miller] and [Taylor]," but "[i]n the event of [Miller]'s death, the unpaid indebtedness remaining on the note shall be canceled." Compl., Ex. 1 (Promissory Note) at 1.

Richcom held a Board of Directors meeting on June 7, 2011, to discuss whether the company should "[l]oan $600,000 USD to [Miller] from [Transmashholding's] 20M Euro." Compl., Ex. 2 (Minutes of the Meeting of the Board of Directors held June 7, 2011 ("June 2011 Board Minutes" or "Minutes")) at 1. The Minutes of the Board meeting state that "Taylor requested [that] [Richcom] . . . advance the loan to [Miller] from the funds received from Transmashholding." Compl. ¶ 19; Compl., Ex. 2 (June 2011 Board Minutes) at 1. The Minutes further noted that Taylor "has secured a personal promissory note from [Miller] for the loan of $600,000 USD" and "will transfer funds from his corporate account at Securicore Hong Kong in the event the [€20 million] must be repaid to Transmashholding." Compl., Ex. 2 (June 2011 Board Minutes) at 1. During the meeting, the Board of Directors "[r]esolved" to "advance the loan" to Miller. Id. Richcom subsequently transferred $600,000 from its HSBC bank account to Miller's account at SunTrust Bank in Washington, D.C. Compl. ¶ 20; Compl., Ex. 3 (HSBC Telegraphic Transfer/Interbank Fund Transfer ("Interbank Transfer Form")) at 1. Miller then used the funds to pay personal tax obligations and "repay debts to SunTrust Bank and other creditors." Compl. ¶ 20.

Transmashholding filed a Statement of Claim against Richcom and to affiliated entities in Hong Kong "before the High Court of Hong Kong" on November 14, 2011, alleging "knowing

3

receipt and dishonest assistance, conspiracy, and unjust enrichment." Id. ¶¶ 26-27. On June 4, 2012, Transmashholding and Richcom executed a settlement agreement that, in addition to the return of any Transmashholding funds still in Richcom's possession, required "Richcom and certain of its principals and affiliates '[to] use their best efforts to procure the assignment to [Transmashholding] of the Promissory Note, dated June 6, 2011, in the amount of US $600,000, from [Miller] in favor of [Taylor].'" Id. ¶ 28. However, the parties to the settlement, "notwithstanding their 'best efforts' . . . have been unable even to locate Taylor . . . for purposes of procuring assignment of the Promissory Note." Id.

In February 2012, Transmashholding "confronted Miller and demanded repayment of the $600,000," but "Miller has refused to repay the stolen money to [Transmashholding]," id. ¶ 5, "implausibly claim[ing] that he understood the funds to be a personal loan from Taylor," id. ¶ 21, and "refus[ing] to return the stolen funds to [Transmashholding] because Miller . . . insists that Taylor, as holder of the Promissory Note, is the true claimant to the $600,000," id. ¶ 37. Transmashholding filed its Complaint in this case on November 21, 2013, naming both Miller and Taylor as defendants and asserting claims of conversion and unjust enrichment. Id. ¶ 1. Miller now moves to dismiss both claims asserted against him pursuant to Rules 12(b)(6), for failure to state a claim, Def.'s Mot. at 1, and 12(b)(7), for failure to join an indispensable party, Def.'s Am. Mot. at 1-2.

## II. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff receives the "benefit of all inferences that can be derived from the facts alleged[.]" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement.  Iqbal, 556 U.S. at 678.  Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

### B. Federal Rule of Civil Procedure 12(b)(7)

A complaint may be dismissed pursuant to Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Courts are generally reluctant to grant Rule 12(b)(7) motions, and "'dismissal is warranted only when the defect is serious and cannot be cured.'" Direct Supply, Inc. v. Specialty Hosps. of Am., 878 F. Supp. 2d 13, 23 (D.D.C. 2012) (quoting 5C Charles Alan Wright et al., Federal Practice & Procedure § 1359 (3d ed. 2004)).  As with other Rule 12 motions, when considering a 12(b)(7) motion a court must accept as true the allegations contained in the plaintiff's complaint.  16th & K Hotel, LP v. Commonwealth Land Title Ins. Co., 276 F.R.D. 8, 12 (D.D.C. 2011).  Additionally, "courts may consider both exhibits to pleadings and materials outside the pleadings in resolving a motion to dismiss under Rule 12(b)(7), without converting the motion into a Rule 56 motion for summary judgment." Id. at 12-13 ("The moving party may carry its burden by providing affidavits of persons having knowledge of the[ ] interests [of the alleged necessary party] as well as other relevant extra-

5

pleading evidence.") (citations and internal quotation marks omitted). Whether an absent party is required as a party "can only be determined in the context of a particular litigation." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968) (footnote omitted).

### III. ANALYSIS

#### A. Miller's Motion to Dismiss Pursuant to Rule 12(b)(6)

##### 1) Transmashholding's Conversion Claim

Miller moves for dismissal of Transmashholding's conversion claim pursuant to Rule 12(b)(6) on the grounds that Transmashholding has "fail[ed] to identify any property right to any specific identifiable fund for $600,000." Def.'s Mem. at 5. District of Columbia law recognizes a claim for conversion "when a defendant has unlawfully exercised 'ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto.'" Kaempe v. Myers, 367 F.3d 958, 964 (D.C. Cir. 2004) (quoting Shea v. Fridley, 123 A.2d 358, 361 (D.C. 1956)). "One may be liable for conversion to a person who is in possession of property or who has the right to immediate possession of the property." Curaflex Health Serv., Inc. v. Bruni, 877 F. Supp. 30, 32 (D.D.C. 1995) (citation omitted). "Even where [a] defendant's initial possession of property is lawful, demand for its return by a plaintiff may render continued possession unlawful and show its adverse nature." Calvetti v. Antcliff, 346 F. Supp. 2d. 92, 106 (D.D.C. 2004) (citing Savoy Const. Co., Inc. v. Atchison & Keller, Inc., 388 A.2d 1221, 1223 (D.C. 1978)).

Miller does not contest Transmashholding's allegations that €20 million were embezzled from its bank account and improperly transferred to Richcom, or that Transmashholding may recover the embezzled funds from those parties who may be in ultimate possession of the money. Def.'s Mem. at 2 (conceding that "if the actual funds which Taylor loaned to him were

6

determined to have been stolen, he would have to return them to [Transmashholding]"). Miller argues only that Transmashholding "cannot verify, beyond speculation and mere assumption, that the $600,000 was paid out of the [€20 million] alleged to have been stolen." Def.'s Mem. at 4.[4]

While "[m]oney can be the subject of a conversion claim only if the plaintiff has a possessory right to a specific [and] identifiable fund of money," Curaflex, 877 F. Supp. at 32 (citations omitted), Transmashholding has sufficiently pleaded facts which, when accepted as true, establish a possessory right specific to the funds Miller received. Transmashholding has included, as an Exhibit to its Complaint, a copy of the Interbank Transfer Form documenting that the funds for Miller's loan were acquired from the Richcom bank account in which Transmashholding's embezzled funds were deposited. Compl., Ex. 3 (Interbank Transfer Form) at 1. While it is possible that Richcom may have comingled the embezzled funds with money from other sources, Richcom's June 2011 Board Minutes dispel any doubt as to the source of Miller's loan. As previously noted, the Minutes state that the purpose of the Board meeting was to discuss Taylor's desire to "[l]oan $600,000 USD to [Miller] from [Transmashholding's] 20M Euro." Compl., Ex. 2 (June 2011 Board Minutes) at 1. Furthermore, the Minutes note that "Taylor requested [Richcom] to advance the loan to [Miller] from the funds received from Transmashholding" and that Taylor "will transfer funds from his corporate account at Securicore Hong Kong in the event the [€20 million] must be repaid to Transmashholding." Id.

Miller contests the veracity of the 2011 Board Minutes, arguing that "to assume their credibility for purposes of this motion is out of bounds" because they are "patently self-serving

---

[4] Miller cites several cases analyzing conversion under the laws of Texas, simply stating without any supporting authority that "[t]he law in the District Columbia [sic] is on all fours in this regard with the law of all other jurisdictions in the United States." Def.'s Reply at 7 (emphasis added). The Court need not entertain this reasoning, as ample authority on the subject exists in this jurisdiction.

7

to Richcom" and "produced by admitted wrongdoers." Def.'s Reply at 6. In making such an argument, Miller seemingly misunderstands the standard of review applicable to Rule 12(b)(6) motions, which compels that a complaint receive the "benefit of all inferences that can be derived from the facts alleged," Am. Nat'l Ins. Co., 642 F.3d at 1139, and requires that the Court "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint. Iqbal, 556 U.S. at 679. Thus, in deciding Miller's motion, the Court must not engage in the credibility assessment of the June 2011 Board Minutes proposed by Miller.

Having sufficiently alleged a possessory right to the $600,000 loaned to Miller, and it being uncontested that Miller has denied Transmashholding's demands to return the allegedly stolen money, Transmashholding has pleaded facts sufficient to state a claim for conversion that is plausible on its face. Accordingly, the Court must deny Miller's motion to dismiss this claim pursuant to Rule 12(b)(6).

### 2) Transmashholding's Unjust Enrichment Claim

Miller argues that Transmashholding also fails to state a claim for unjust enrichment because the "[p]laintiff has not shown that it conferred any benefit on Miller" and, even if it did confer such a benefit, it "cannot show that Miller's retention of the benefit was unjust." Def.'s Mem. at 6. "The District of Columbia recognizes unjust enrichment as a species of quasi contract that imposes, 'in the absence of an actual contract, . . . a duty . . . upon one party to requite another in order to avoid the former's unjust enrichment[,] . . . [and therefore] to permit recovery by contractual remedy in cases where, in fact, there is no contract.'" Vila v. Inter-Am. Inv., Corp., 570 F.3d 274, 279-80 (D.C. Cir. 2009) (quoting 4934, Inc. v. D.C. Dep't of Empt. Servs., 605 A.2d 50, 55 (D.C. 1992)) (internal quotations omitted). A party "states a legally cognizable unjust enrichment claim when: (1) the plaintiff confers a benefit on the defendant; (2)

8

the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Armenian Assembly of Am., Inc. v. Cafesjian, 597 F. Supp. 2d 128, 134 (D.D.C. 2009) (citing News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005)).

As to Miller's first argument, the Court has already concluded that the Complaint sufficiently alleges that the funds Miller received from Richcom derived from the Transmashholding's embezzled €20 million. Thus, it is facially plausible that Transmashholding conferred a benefit of $600,000 on Miller,[5] which he has retained in spite of Transmashholding's demands for its return, satisfying the first two elements of the claim.

The Court also finds unpersuasive Miller's argument that Transmashholding "cannot show that Miller's retention of the benefit was unjust." See Def.'s Mem. at 6. The Complaint alleges that "Miller has unjustly retained benefits by wrongfully using the stolen money to pay off his personal debts and expenses," and "[d]espite knowing for over a year and a half that he received $600,000 of funds stolen from [Transmashholding] . . . has refused to return the money." Compl. ¶ 52. At the pleading stage, these allegations are sufficient to survive Miller's motion to dismiss. See McWilliams Ballard, Inc. v. Level 2 Dev., 697 F. Supp. 2d 101, 107 (D.D.C. 2010) (plaintiff properly stated a claim of unjust enrichment by simply alleging that the retention of the conferred benefit was "unjust, unfair, and inequitable," despite offering "no specific allegations" as to the unjust nature of the retention (citation and quotation marks omitted)). Miller raises concerns that Transmashholding's claim "would place Miller in the

---

[5] While this benefit was conferred on Miller through Richcom, "the theory of unjust enrichment could apply to indirect payments" conveyed through a third-party intermediary. See U.S. v. Honeywell Int'l Inc., 798 F. Supp. 2d 12, 25-26 (D.D.C. 2011) (citing In re Lorazepam & Clorazepate Antitrust Litig., 295 F. Supp. 2d 30, 51 (D.D.C. 2003). See also Ca de Lupis v. Bonino, 2010 WL 1328813, at *12 (D.D.C. 2010) ("The defendant mistakenly asserts that because the actual agreement . . . was with a third party and conferred no benefit to him, he cannot be held liable . . . . His position is flawed due to the essence of the unjust enrichment doctrine, which operates from the premise that an actual contract is lacking, but nonetheless provides an avenue for relief to avert an injustice.").

9

untenable position of violating its loan agreement with Taylor" and "require an injustice to Taylor." Def.'s Mem. at 6. Entertaining such arguments would require the Court to weigh one alleged injustice against another and evaluate the merits of Transmashholding's claim. Such an evaluation would be inappropriate for Rule 12(b)(6) purposes, as the Court need only determine whether Transmashholding has pleaded facts sufficient to state a claim that is plausible on its face. See Iqbal, 556 U.S. at 678. Also immaterial to the instant inquiry are Miller's claims that he genuinely believed the transferred funds were a personal loan from Taylor because "[a] claim of unjust enrichment does not require fault on the part of the recipient to the benefit . . . . His innocence in receiving the benefit does not mean that his retention of that benefit without payment is just." Standard Ins. Co. v. Burch, 540 F. Supp. 2d 98, 105 (D.D.C. 2008) (quoting 4934, Inc., 605 A.2d at 56).

The Complaint, having asserted facts sufficient to state a claim of unjust enrichment that is plausible on its face, requires the Court to deny Miller's motion to dismiss this claim pursuant to Rule 12(b)(6).

### B. Miller's Motion to Dismiss Pursuant to Rule 12(b)(7)

Miller argues, in the alternative, that Transmashholding's claims should be dismissed pursuant to Rule 19 because it has not served Taylor. Def.'s Am. Mot. at 1-2. Rule 19 "establishes a two-step procedure for determining whether an action must be dismissed because of the absence of a party needed for a just adjudication." Cherokee Nation of Okla. v. Babbitt, 117 F.3d 1489, 1495–96 (D.C. Cir. 1997). The Court must first "determine whether the absent party is 'necessary' to the litigation" according to the enumerated circumstances set forth in Rule 19(a)(1). Id. at 1496. Generally, a party is necessary to litigation if:

> (A) in that person's absence, the [C]ourt cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the

> action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "If a necessary party cannot be joined, the [C]ourt must turn to the second step, examining the factors in Rule 19(b) to 'determine whether in equity and good conscience, the action should proceed among the parties before it, or should be dismissed, the absent person being regarded as indispensable." Cherokee Nation, 117 F.3d at 1496. "If the Court determines that [the absent party] is not required under Rule 19(a), it need not proceed to the second step of the test . . . ." Cronin v. Adam A. Weschler & Son, Inc., 904 F. Supp. 2d 37, 41 (D.D.C. 2012).

Even if Miller could establish that Transmashholding's inability to serve process on Taylor effectively creates a constructive absence for Rule 19 purposes, his motion fails because the Advisory Committee Notes to Rule 19(a) explicitly state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." Further, the Supreme Court has long held that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990) (citation omitted). See also Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 132 (1912). "Under District of Columbia law, multiple defendants found liable for a single injury are deemed to be joint tortfeasors . . . ." Faison v. Nationwide Mortg. Corp., 839 F.2d 680, 686 (D.C. Cir. 1987). As Transmashholding's claims sound in tort, demanding relief from either co-defendant in the form of compensation equivalent to a discrete sum of money allegedly embezzled from its account, the Court concludes that Miller and Taylor are joint tortfeasors in this action. This determination is consistent with both parties' understanding of the Complaint; Transmashholding states that "Miller and Taylor are joint tortfeasors . . . jointly and severally liable to [Transmashholding] for the full $600,000," Pl.'s

Opp'n at 13, and Miller concedes in his reply that "Taylor is an alleged joint tortfeasor . . . ," Def.'s Reply at 11.  As Taylor's status as a joint tortfeasor precludes him from being an indispensable party under Rule 19, the Court must deny Miller's motion to dismiss the case pursuant to Rule 12(b)(7).

## IV. CONCLUSION

Transmashholding has sufficiently alleged in its Complaint facts, which must be accepted as true, that establish liability for the torts of conversion and unjust enrichment.  Furthermore, Miller has not identified an absent party that is indispensable to an appropriate resolution of this case.  Accordingly, for the foregoing reasons, the Court must deny Miller's motion to dismiss Transmashholding's claims pursuant to Rules 12(b)(6) and 12(b)(7).

**SO ORDERED** this 6th day of October, 2014.[6]

REGGIE B. WALTON  
United States District Judge

---

[6] An order consistent with this memorandum opinion will be issued contemporaneously.